THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RANDA R. MIKEL, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

CASE NO. C24-5689-JCC

ORDER

This matter comes before the Court on Defendant's motions to exclude expert testimony (Dkt. No 26) and for partial summary judgment (Dkt. No. 28). Having thoroughly considered the briefing and the relevant record, the Court DENIES the motion to exclude (Dkt. No. 26) and GRANTS the motion for partial summary judgment (Dkt. No. 28) as described herein.

## I. BACKGROUND

This is a Federal Tort Claims Act case asserting medical malpractice (*i.e.*, negligence) and loss of consortium on the part of physicians, staff, and nurses at the Madigan Army Medical Center. (*See generally* Dkt. No. 10.) According to Plaintiffs, the patient, Randa Mikel suffered ongoing back pain from a 2013 motor vehicle accident. (*Id.* at 5.) In 2016, Ms. Mikel went to Madigan for back fusion surgery. (*Id.* at 5.) Richard Teff, M.D., performed the procedure which, according to Plaintiffs, was botched when Dr. Teff anchored three of the four pedicle screws

(used to fuse disks in Ms. Mikel's spine) into her soft tissue, rather than into her bone, and then failed to discover the error on follow-up. (*Id.* at 5–6.)

Ms. Mikel underwent corrective surgery in 2022 at a different facility. (*Id.* at 7.) Patrick Han, M.D., removed the four screws Dr. Teff had placed in 2016. (*See, e.g.*, Dkt. Nos. 33-4 at 8, 35-2 at 3–4.) Dr. Han revised three of the placements, which he later described as "in blatantly the wrong position . . . by any standard." (Dkt. No. 33-3 at 8.) Dr. Han deemed the fourth placement appropriate, though, so he reused it when setting new screws. (*See, e.g.*, Dkt. Nos. 33-4 at 8, 35-2 at 3–4.) Dr. Han fused adjoining discs at the same time. (*See, e.g.*, Dkt. No. 27-3 at 9.) They were not involved in Dr. Teff's 2016 procedure. (*Id.*) Ms. Mikel underwent another procedure by Dr. Han in 2025, fusing additional adjacent disks. (*See, e.g.*, Dkt. No. 27-1 at 65.)

Based on alleged pain and suffering, lifestyle impact, and loss of consortium from the 2016 procedure, Plaintiffs filed suit in 2024, seeking special and general damages to be proven at trial. (*See* Dkt. No. 1.) Discovery is now closed and trial is approaching. (*See* Dkt. No. 24.) In preparation, Defendant moves to exclude portions of Plaintiff's expert's testimony, (*see* Dkt. No. 26), and for partial summary judgment as to the measure and/or source of certain damages, (*see* Dkt. No. 28).

## II. DISCUSSION

### A. Motion to Exclude Expert Testimony (Dkt. No. 26)

If allowed to testify, Plaintiff's expert, John Czerwin, M.D., would opine that Dr. Teff's screw placements and post-surgery follow-up fell below the standard of care for physicians in his field and that this resulted in years of debilitating back pain. (Dkt. No. 27-5 at 8–10.) Defendant asks to bar the causation piece of this testimony. (*See generally* Dkt. No. 26.) It contends that, while Plaintiffs have established that Dr. Czerwin is qualified to testify on the *standard* of care, he has not established that he is qualified to opine whether Ms. Mikel's pain was, in fact, *caused* by Dr. Teff's alleged breach of his duty of care. (*See generally* Dkt. No. 26.)

According to Defendant, the only evidence Dr. Czerwin cites in support of his conclusion

(that the misplaced screws caused Ms. Mikel's pain) is her medical record(s) which indicate that, despite their placement, the screws did generally set and stabilize Ms. Mikel's spine. (*See* Dkt. No. 26 at 8–10) (citing Dkt. Nos. 27-5). Meaning, the record relied on directly refutes rather than supports the expert's opinion. (*Id.*) Further, says Defendant, Dr. Czerwin fails to consider the role that the 2013 auto accident and/or adjacent degenerating discs (not involved in the 2016 procedure) had in Ms. Mikel's ongoing pain. (*Id.*) Given this, Defendant contends the expert's report is insufficient to support Rule 702 admission (on the issue of causation). (*Id.*)

Federal Rule of Evidence ("FRE") 702 confers upon the trial court a gatekeeping role to screen expert testimony for its relevancy and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Under that Rule, a trial court may permit a witness who is qualified as an expert to testify in the form of an opinion if: (1) their scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) they have reliably applied the principles and methods to the facts of the case. *Id.* at 595 (citing Fed. R. Evid. 702).[1] Defendant's argument is based on

[1] While this inquiry is, notably, a flexible one, its focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95. Indeed, the Court's gatekeeping function is limited only to "ensur[ing] the reliability and relevancy" of expert testimony, *not* its reasonableness. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). That is, the Court may not preclude the admission of expert testimony based purely on "[t]he presence of opposing scientific tests or methods," as such presence speaks to the weight of the evidence, not its admissibility. *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1242 (W.D. Wash. 2018) (quoting *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Nevertheless, "[t]he proponent of an expert witness . . . must <u>first</u> demonstrate by a preponderance of the evidence that the expert's testimony answers the 'critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology'" before it can be admitted and considered by the trier of fact. *Moore v. Barnes*, 802 F. Supp. 3d 792, 823 (E.D.N.C. 2025) (quoting Fed. R. Evid. 702 advisory committee note to 2023 amendment; *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025)) (emphasis added). At bottom, "so long as the methods employed by the expert

requirements (2)–(4) above.

In sum, Defendant contends that Dr. Czerwin's causation conclusion is insufficiently tethered to cited supporting evidence (and/or that he failed to consider other causes). (*See generally* Dkt. No. 26.) The Court disagrees. While Dr. Czerwin's report is brief, it is enough to satisfy Rule 702. It describes the medical records he reviewed. (*See* Dkt. No. 33-4 at 3.) From them, he concludes that, even if the misplaced screws *stabilized* Ms. Mikel's spine, they would still cause pain, given their placement (through muscle and other soft tissue). (*See* Dkt. No. 33-4 at 9–10.) This is consistent with Dr. Han's testimony. (*See, e.g.*, Dkt. No. 33-3 at 9.) And just because Dr. Czerwin did not affirmatively discuss the import of *other* injuries, (*see generally* Dkt. No. 33-4), it would be inappropriate for the Court to assume he did not consider them, given the records he says he reviewed, which contain information regarding those injuries.

Accordingly, the Court finds that Dr. Czerwin's testimony at trial as to the standard of care *and* to causation satisfies Rule 702.

**B. Motion for Summary Judgment (Dkt. No. 28)**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a

---

are scientifically valid, disagreement with the assumptions behind the methods or the methodology employed does not warrant exclusion." *Moussouris*, 311 F. Supp. 3d at 1242 (citing *S.E.C. v. Das*, 723 F.3d 943, 950 (8th Cir. 2013)).

genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). However, conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). In turn, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In moving for partial summary judgment, Defendant first seeks the following: a ruling that there is no genuine issue of fact to preclude a finding as a matter of law that Ms. Mikel's "adjacent segment disease," associated with her L4-L5 fusion, is not recoverable in this suit, nor can Plaintiffs recover for harms following the 2022 corrective procedure.[2] (*See* Dkt. No. 28 at 7–8.) Plaintiffs concede the issue. (*See* Dkt. No. 34 at 10.) Thus, summary judgment to Defendant on harms resulting from procedures other than the 2016 fusion is warranted, as is summary judgment on harms after the 2022 corrective procedure.

Defendant next asks for summary judgment on the *amount* of past medical expenses, contending Plaintiffs fail to offer the requisite evidence as to their reasonableness and necessity. (*See* Dkt. No. 28 at 3–5.) Indeed, "[a] plaintiff in a negligence case may recover only the reasonable value of medical services, not the total of all bills paid . . . [and] only if supported by *additional* evidence that the treatment *and the bills* were both necessary and reasonable." *Patterson v. Horton*, 929 P.2d 1125, 1130 (Wash. Ct. App. 1997) (emphasis added).

Plaintiffs first point to testimony from Dr. Han and from Defendant's own expert as to the reasonableness of the 2022 treatment. (*See* Dkt. No. 34 at 7–8.) But, at least at this stage, this issue is not contested. What is contested is the reasonableness of the costs. On this issue,

---

[2] As described above, Ms. Mikel's 2022 surgery both corrected the 2016 screw placement to fuse her L3-L4 *and* fused her L4-L5 discs (which Defendant terms "adjacent segment disease"). (*See, e.g.*, Dkt. No. 27-1 at 44.) This is undisputed. (*See generally* Dkt. No. 28, 34.)

Plaintiff's response is deficient. Plaintiffs suggest the reasonableness is supported by evidence that Medicare approved the amounts. (*Id.* at 8–9.) From this, imply Plaintiffs, one can intuit that (a) the amounts were reasonable and (b) this is the type of 'additional' evidence needed. (*Id.*) But Plaintiffs point to no authority for this proposition. (*See generally* Dkt. No. 34.) Whereas Defendant rightly notes the "weight of authority" mandates, at a minimum, expert testimony. (Dkt. No. 38 at 4) (citing *Aldan v. Home Depot USA Inc.*, 2022 WL 17740315, slip op. at 3 (W.D. Wash. 2022)). This, Plaintiffs clearly don't offer. (*See generally* Dkt. No. 34.) And Medicare approval, which they do offer, is "not helpful to the jury in determining whether [a plaintiff's] medical expenses were reasonable." *Gerlach v. Cove Apartments, LLC*, 446 P.3d 624, 633 (Wash. Ct. App. 2019), *rev'd on other grounds*, 471 P.3d 181 (2020).

Put simply, because Plaintiffs, who have the burden at trial, offer no evidence (other than Medicare approval) on the reasonableness of the *amounts* incurred for past medical care, the Court must find as a matter of law they are not recoverable.

## III. CONCLUSION

For the reasons described above, the Court DENIES Defendant's motion to exclude (Dkt. No. 26) and GRANTS its motion for summary judgment (Dkt. No. 28). As a matter of law, (a) Plaintiff's damages flowing from the 2016 procedure are not recoverable beyond the 2022 corrective procedure and (b) damages for past medical expenses are not recoverable based on a lack of genuine issue of fact as to the *reasonableness* of the *amount*.

DATED this 21st day of August 2026.

John C. Coughenour
UNITED STATES DISTRICT JUDGE